**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | **Case No. 25-CR-00134 (RC)** |
| **v.** | **:** | |
| | **:** | |
| **RYAN MICHAEL ENGLISH,** | **:** | |
| also known as, "Reily" Michael English, | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

**GOVERNMENT'S RESPONSE TO THE DEFENDANT'S**
**MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby responds to the Defendant's Memorandum in Aid of Sentencing. (ECF No. 48) ("Def. Memo").

The Government submits that: i) the Defendant's Memorandum incorrectly calculates the applicable Sentencing Guidelines by ignoring or downplaying the overwhelming evidence that the Defendant attempted to assassinate Secretary Bessent; and ii) a downward variance is not appropriate based on the 3553(a) factors. In support of its argument, the Government avers the following and any additional points that may be adduced at a hearing on the matter.

**I.  The Applicable Guidelines – The Defendant Attempted to Murder Secretary Bessent**

The Defendant's claim, , that the Government has failed to establish by a preponderance of the evidence that the Defendant attempted to commit first degree murder because a) the Defendant did "not make a substantial step toward the completion of the offense of murder" and b) the Government's argument rests entirely on statements that the Defendant made after arrest *(see* Def. Memo at 20-21), is wrong and is not supported by the facts or the law.

As an initial matter, the Government does not rely on the Defendant's statements alone in arguing that the Defendant attempted to commit murder. Although the Defendant's statements are

indicative of his intent to kill Secretary Bessent, the Defendant's actions alone demonstrate substantial steps to accomplish the goal of committing murder. In its Sentencing Memorandum, the Government outlined a lengthy series of steps taken by the Defendant to accomplish the murder of Secretary Bessent. Each of these steps is consistent with the Defendant's intent, which are further corroborated by the Defendant's own admissions.

For approximately one month, the Defendant planned the attack, deliberately avoided electronic surveillance by leaving behind cellular devices, obtained materials for and constructed multiple Molotov cocktails, traveled hundreds of miles from Massachusetts to Washington armed with destructive devices and a knife, researched potential targets, selected Secretary Bessant after learning of his confirmation vote, and spent more than an hour surveilling the Capitol Grounds while searching for an opportunity to carry out the assassination. In sum, on January 27, 2025, the Defendant was at the end of a journey of hundreds of miles, in possession of multiple potential murder weapons, and had spent over an hour surveilling the location of the intended attack. Each of these acts is consistent with the Defendant's statements of intent and substantial steps toward the completion of an assassination.

These actions provide a legal basis for finding that the Defendant took substantial steps to carry out his plan to murder Secretary Bessent. For example, in *United States v. Duran*, the D.C. Circuit held that a defendant's purchasing a rifle, ammunition clips, and a large overcoat to conceal the rifle, traveling to Washington, D.C., and standing by the White House gate with the rifle and ammunition concealed, was "more than sufficient" evidence of "substantial steps" taken in pursuit of the Defendant's objective to kill the President, even before having fired any shots. 96 F.3d 1495, 1508 (D.C. Cir. 1996). The facts described by the Circuit in *Duran* are directly in line with the facts of this case, where the Defendant was armed with two weapons (Molotov cocktails and a

2

knife), traveled to D.C., and went to the location where the intended target was located, but could not gain access. In addition, a defendant cannot avail herself of an abandonment or withdrawal defense to an attempt offense because by its nature an attempt offense "is complete with proof of intent together with acts constituting a substantial step toward commission of the substantive offense." *United States v. Shelton*, 30 F.3d 702, 706 (6th Cir. 1994); *see also United States v. Tilotta*, 588 F. Supp. 3d 1058, 1064 (S.D. Cal. 2022). Here, all the evidence indicates that the Defendant attempted to kill Secretary Bessent and took substantial steps to do so, but could not complete the murder because the Defendant could not gain access to the victim.

While the Defendant's actions demonstrate the Defendant's state of mind, there can be little evidence more probative of the Defendant's intent than the near contemporaneous statements made immediately after the attempted assassination. As set forth in the Government's Sentencing Memorandum, the Defendant repeatedly and explicitly described to law enforcement the intent to carry out political violence against a member of the Administration generally, and on Secretary Bessent particularly. Indeed, within less than a minute and a half of being handcuffed, the Defendant responded to the relatively innocuous question, "What are you doing here today?" by stating, "I was going to kill Scott Bessent." Then, after receiving and waiving *Miranda* warnings, the Defendant further confirmed in numerous statements the intent and plan to murder Secretary Bessent by either burning him with the Molotov cocktails or stabbing him with the knife, both of which law enforcement recovered from Defendant's person. While the Defendant certainly expressed some conflicting thoughts and reservations regarding whether violence could be justified, ultimately, the Defendant's own words summarized the decision: "For everything I've said, yes, I was going to kill a man in cold blood who I never met, yes."

Despite these clear and unequivocal statements of intent, which are supported by the Defendant's actions and all the other evidence, the Defendant now seeks to cast doubt on the reliability of statements made to law enforcement on January 27, 2025. However, throughout the multiple statements to law enforcement, there is no indication that the Defendant did not mean what the Defendant said. Both to law enforcement on the scene, and later during the custodial interview, the Defendant provided explicit details that were able to be verified against physical evidence, such as the Defendant's purchase of an atlas, using a sweatshirt and hand sanitizer to make the wicks of the Molotov cocktails, and the location of the Defendant's phone and computer. Put simply, the Defendant's repeated admissions about an intent to murder Secretary Bessent were truthful.

The Defendant's argument that a lack of digital evidence exonerates him is also unavailing (*see* Def. Memo at 20). Indeed, the Defendant clearly explained taking measures on multiple occasions to ensure that no digital evidentiary trail of the planned assassination would be left behind, telling officers about leaving behind a cell phone to avoid digital tracking and using a false identity to research targets at a library. Therefore, the lack of any digital evidence of the Defendant's plan is the very product of the Defendant's premeditation and efforts to evade detection.

Accordingly, because the object of the Defendant's offense would have constituted first-degree murder and the Defendant took substantial steps towards accomplishing that objective, the cross-reference of U.S.S.G. § 2K2.5(c)(1)(A) applies and U.S.S.G. § 2A2.1(a)(1) is the appropriate primary Guideline. Thus, the Sentencing Guidelines range is properly calculated as 97-121 months, consistent with Probation's calculation.

**II.** **The Defendant's Physical Health, Mental Health, and Substance Abuse Issues Should Not Reduce the Sentence**

The bulk of the Defendant's sentencing memorandum appears to argue for a downward variance of time served, which is a mere fraction of the applicable Guidelines' sentence, because of the Defendant's struggles with physical health, mental health, and substance abuse. Such as drastic variance is not warranted here and is not supported by the facts.

Regarding the Defendant's mental health issues, the Government notes that competency has not been raised at any point during the pendency of this matter. Indeed, the Defendant's statements to law enforcement and efforts to conceal preparations reveal a clear understanding that the Defendant knew these actions were wrong, but exhibited a sustained commitment over a lengthy period to accomplish the goal. Further, the Defendant's discussions with law enforcement demonstrate that the Defendant was thoughtful and spent weeks grappling with the morality of the criminal conduct. The Defendant truly assessed and understood the harm that would be caused by the Defendant's actions but decided to act anyway. Accordingly, a downward variance is inappropriate. To that end, the Defendant has submitted no evidence that the Defendant's purported mental health issues resulted in any unusual degree or resulted in any diminished capacity in decision-making at the time of the offense. *United States v. Greenfield*, 244 F.3d 158, 162 (D.C. Cir. 2001) (affirming District Court's refusal to grant downward departure where the Defendant had not established significant mental health issue that diminished capacity); *United States v. Fields*, No. 23-3017, 2026 WL 2066418, at *3 (D.C. Cir. July 17, 2026) ("no authority that compels a District Court Judge to lower a sentence based on mental health alone").

To the extent the Defendant's mental health or substance-abuse issues played any role in the intent to commit the crime, even the Defendant's own expert acknowledges that the Defendant's mental health has improved through treatment received while detained. Since being

detained in this matter, the Defendant has described making significant progress in mental health treatment while incarcerated. The Bureau of Prisons has significant resources to address the Defendant's documented mental health needs, while, to date, the Defendant does not appear to have sought recent treatment while outside of custody. The Defendant's memorandum fails to indicate any basis to believe that the effective treatment for those issues received while incarcerated would not continue to yield positive results.

Similarly, to the extent that the Defendant's substance abuse issues played some role in the instant offenses, for which there is little evidence, the Bureau of Prisons has resources to address and treat the Defendant's needs. Further, the Government notes that U.S.S.G. previously included a policy statement that "Drug or alcohol dependence or abuse ordinarily is not a reason for a downward departure. Substance abuse is highly correlated to an increased propensity to commit crime." U.S.S.G. § 5H1.4 (2024 Ed.). By contrast, releasing the Defendant or imposing a sentence that undermines the serious nature of the offense not only risks the safety of the public, but could jeopardize the progress being made through the Bureau of Prisons mental health and substance abuse treatment programs. The Government notes that, other than for a brief period nearly a decade ago, the Defendant does not appear to have voluntarily engaged in mental health treatment prior to incarceration despite an apparent recognized need.

Finally, the Defendant's memorandum also gives no basis for a downward variance based on the Defendant's physical health. The Defendant's contention is entirely based on the conclusory statement that "good access to medical care is harder to come by in the BOP," Def. Memo at 15, without any non-speculative reason that the Defendant's health could not be adequately treated while in BOP custody.

Accordingly, the Defendant should not receive any downward variance for any physical,

6

mental, or substance issue.

## **CONCLUSION**

For all the foregoing reasons, as well as the reasons set forth in its sentencing memorandum (ECF No. 46), the Government respectfully requests that the Court impose a total sentence of 121 months of imprisonment, followed by 3 years of supervised release.

Respectfully submitted,

Jeanine Ferris Pirro
United States Attorney

By:     */s/ Brendan M. Horan*
Brendan M. Horan
Special Assistant United States Attorney
N.Y. Bar No. 5302294
601 D Street NW
Washington, DC 20579
(202) 730-6871
Brendan.Horan@usdoj.gov